IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JASON T. O'NEIL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | C.A. No. 20-319-LFR |
| ) | |
| DELAWARE DEPARTMENT ) | |
| OF CORRECTION, ) | |
| et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION**

RESTREPO, United States Circuit Judge.                                July 12, 2022

Before the Court is Defendants' Motion to Dismiss (D.I. 51) under Federal Rule of Civil Procedure 12(b)(6). The Court will grant the Motion as to the civil rights claims against Defendant Delaware Department of Correction ("DOC") because, as Plaintiff concedes, sovereign immunity bars those claims. But, for the reasons set forth below, the Court will deny the Motion as to the breach of contract claim against the DOC, and as to the excessive force claim against Defendant Sergeant Mason Frazier.

I.     INTRODUCTION AND BACKGROUND[1]

Plaintiff Jason T. O'Neil has been incarcerated at the James T. Vaughn Correctional Center in Smyrna, Delaware since 2013.

---

[1] Because the Court is writing for the parties, this Memorandum includes only the background relevant to the disposition of the instant Motion.

In 2016, in *CLASI v. Coupe*, Civ. No. 15-688-GMS (D. Del), the DOC entered into a Settlement Agreement providing, among other things, for the improvement of mental health services for inmates in the DOC's custody. D.I. 47 ¶ 18; *id.* at Ex. B (copy of Settlement Agreement). Plaintiff contends that he was one of the original inmates of the plaintiff class in *CLASI*, and thus the Settlement Agreement is a binding contract between him and the DOC. D.I. 47 ¶ 19.

On August 13, 2019, Plaintiff attempted to swallow a paper clip, and had a verbal exchange with Sergeant Frazier,[2] who declined to call a licensed mental health professional. *Id.* ¶ 13. The verbal exchange between Plaintiff and Sergeant Frazier escalated, and Sergeant Frazier sprayed Plaintiff with pepper spray until the pepper spray can was empty. *Id.* This caused Plaintiff permanent eye damage. *Id.*

On March 10, 2020, Plaintiff swallowed four sporks, a pen, and a piece of metal approximately 16cm long—which may have been a radio antenna. *Id.* ¶ 14. As a result, Plaintiff had blood in his stool and endured severe pain. *Id.* He asked to be sent to the hospital. *Id.* The DOC refused. *Id.* ¶ 15–16. Instead, it had its internal medical team monitor him, including with x-rays to look for organ perforation. *Id.* Three months later, after Plaintiff had developed an abdominal hernia, the DOC sent him to an outside hospital. *Id.* ¶ 16.

Plaintiff claims that (1) the DOC violated his Eighth Amendment rights by failing to properly treat him for the injuries he suffered by intentionally swallowing the aforementioned objects; (2) the DOC breached the Settlement Agreement by failing to make mental health care accessible to him; and (3) that Sergeant Frazier used excessive force against Plaintiff by emptying a can of

---

[2] The operative complaint refers to Sergeant Frazier as "Corporal Frazier." The Court will follow the parties' briefs by referring to him as "Sergeant Frazier."

pepper spray on him, causing permanent eye damage.  Defendants move under Federal Rule of Civil Procedure 12(b)(6) to dismiss these claims.[3]  D.I. 51.

Plaintiff concedes that his claims against the DOC—except for breach of contract—are barred by sovereign immunity and must be dismissed.  D.I. 56 p.1.  Accordingly, for purposes of the instant Motion, the parties only dispute whether the following claims should be dismissed: (1) breach of contract against the DOC; and (2) excessive force against Sergeant Frazier.  The Court will grant the unopposed portion of Defendants' Motion and dismiss the civil rights claims against the DOC.

But, for the reasons that follow, the Court will deny Defendants' Motion as to (1) the breach of contract claim against the DOC and the (2) excessive force claim against Sergeant Frazier.

## II.   JURISDICTION

This Court has jurisdiction over the federal civil rights claims under 28 U.S.C. § 1331.  This Court has supplemental jurisdiction over the breach of contract claims under 28 U.S.C. § 1367(a).  *See De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301, 308 (3d Cir. 2003) (noting when "state-law claims share a 'common nucleus of operative fact' with the claims that supported the district court's original jurisdiction," exercising supplemental jurisdiction is proper) (quoting *U.S. Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966)).

## III.   LEGAL STANDARD

Federal Rule of Civil Procedure Rule 12(b)(6) permits a party to move to dismiss a complaint for failure to state a claim upon which relief can be granted.  When considering such a motion, a court must accept as true all factual allegations in the complaint and view them in the light most

---

[3] Plaintiff also has claims against additional defendants, but they are not part of the instant Motion.  *See* D.I. 35 (staying claims against certain defendants due to bankruptcy proceedings).

favorable to the plaintiff. *Umland v. Planco Fin. Servs.*, 542 F.3d 59, 64 (3d Cir. 2008). To state a claim upon which relief can be granted, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although detailed factual allegations are not required, the pleading must set forth sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). A claim is facially plausible when the factual allegations allow a court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 663; *Twombly*, 550 U.S. at 555–56.

IV. DISCUSSION

A. Breach of Contract (against the DOC)

To state a claim for breach of contract under Delaware law, a plaintiff must allege (1) the existence of a contract; (2) breach of the contract; (3) damages as a result of the breach; and (4) that plaintiff performed its duties under the contract. *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003). Here, for purposes of the instant Motion, only the first element is disputed: Defendants contend that Plaintiff has failed to plead the existence of a contract.

More specifically, Defendants argue that Plaintiff's allegations do not point to any relevant provision of the Settlement Agreement that is relevant to his theory of breach. *See* D.I. 52 pp. 9–10. This argument hinges on whether Plaintiff has alleged that the DOC denied him *mental* health care, as opposed to *physical* health care. This is because the Settlement Agreement requires the DOC to "make mental health services in the continuum of care, outpatient through inpatient, accessible to all inmates in need of such services," *see* D.I. 47 Ex. B p.4 ¶ G, but

4

Plaintiff does not point to, and the Court does not discern, a similar obligation in the Agreement regarding physical health services.[4]

In the operative complaint, Plaintiff alleges, among other things, that "[o]n August 13, 2019, during an attempt to swallow a paper clip [Sergeant] Frazier declined to call a licensed mental health professional." D.I. 47 ¶ 13. Six months later, "[o]n March 10, 2020, Mr. O'Neil swallowed four sporks, a pen, and a piece of metal (believed to be a radio antenna) approximately 16cm long. Mr. O'Neil requested to be sent to the hospital to receive appropriate treatment." *Id.* ¶ 14. But the DOC did not send Plaintiff to the hospital until three months later, opting to monitor and treat him within its own facilities. *Id.* ¶¶ 15–16; *see also id.* at Ex A (Plaintiff's DOC medical records); D.I. 52 at 7 n.4 (describing Plaintiff's medical treatment by DOC). Plaintiff's theory is that the DOC breached its obligation to make necessary mental health services accessible to him. *See* D.I. 47 ¶ 24.

Defendants' position is that "Plaintiff does not allege any facts that would suggest that the treatment at the [outside] hospital would have provided mental health care as contemplated in the settlement agreement." D.I. 52 p. 10. Defendants are correct, but they fail to explain why the allegation that Sergeant Frazier declined to call a licensed mental health professional is insufficient to adequately plead that the DOC failed to make mental health services accessible.[5]

---

[4] *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (A "document *integral to or explicitly relied* upon in the complaint" may be considered "without converting the motion [to dismiss] into one for summary judgment.") (emphasis in original).

[5] Defendants do, however, contend that Plaintiff cannot use this allegation in support of his breach of contract claim because he does not repeat it in latter portion of his complaint where he breaks his allegations into counts. *See* D.I. 57 (arguing Plaintiff pointing to this allegation in his response to the Motion is an attempt to amend his pleading via his brief). But Plaintiff's Count II (breach of contract) specifically re-alleges and incorporates that allegation. *Compare* D.I. 47 ¶ 13 ("On August 13, 2019, during an attempt to swallow a paper clip [Sergeant] Frazier declined to call a licensed mental health professional.") *with id.* at ¶ 23 (re-alleging and incorporating by reference paragraphs 1–19).

*See* D.I. 47 ¶ 13.  Defendants are also correct that some of Plaintiff's allegations are conclusory assertions that the Court does not presume true.  *See, e.g.*, *id.* ¶ 24 (alleging "[f]ailure to send Mr. O'Neill [sic] to the hospital deprived him of necessary mental health and physical treatment.").  But Plaintiff's allegation that the DOC (via Sergeant Frazier) refused to call a licensed mental health professional for him is entitled to the presumption of truth on a motion to dismiss.  *See id.* ¶ 13 ("On August 13, 2019, during an attempt to swallow a paper clip [Sergeant] Frazier declined to call a licensed mental health professional.").

Making the required inferences in favor of Plaintiff, he has adequately pleaded that by refusing to call a mental health professional, the DOC breached the Settlement Agreement by failing to make mental health services accessible to him.

Defendants also argue that Plaintiff failed to adequately plead the existence of a contract because, in their view, he failed to allege a specific obligation of the Settlement Agreement that he contends was breached.  *See* D.I. 52 p. 10.  Not so.  His complaint explicitly alleges a theory of breach based on the Agreement's requirement that the DOC make mental health care accessible.  *See* D.I. 47 ¶ 24.  The cases Defendants cite requiring a claimant to identify the provision that was allegedly breached center on whether a pleading gives adequate notice to the defending party.  Here, the operative complaint clearly identifies the obligation Plaintiff contends was breached, thus providing adequate notice.

Plaintiff has adequately pleaded a breach of contract claim against the DOC.

B. <u>Excessive force (against Sergeant Frazier)</u>

The Eighth Amendment protects inmates from excessive force by prison officials. *See Whitley v. Albers*, 475 U.S. 312, 327 (1986). The use of force is actionable under 42 U.S.C. § 1983 when it exceeds "that which is reasonable and necessary under the circumstances." *Davidson v. O'Lone*, 752 F.2d 817, 827 (3d Cir. 1984). "The infliction of pain in the course of a prison security measure . . . does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable, and hence unnecessary in the strict sense." *Whitley*, 475 U.S. at 319. Rather, the key inquiry in excessive force claims is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992); *see also Wilkins v. Gaddy*, 559 U.S. 34 (2010).

In making that inquiry, the Court considers the following factors: (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of the injury inflicted; (4) the threat reasonably perceived by the responsible officials; and (5) the efforts made to temper the severity of a forceful response. *Brooks v. Kyler*, 204 F.3d 102, 106 (3d Cir. 2000); *see also Whitley*, 475 U.S. at 321.

Here, Plaintiff's excessive force claim centers on the allegation that Sergeant Frazier emptied a can of pepper spray on him in an apparent effort to prevent him from swallowing a paper clip:

> On August 13, 2019, during an attempt to swallow a paper clip [Sergeant] Frazier declined to call a licensed mental health professional. The verbal exchange between Mr. O'Neil and [Sergeant] Frazier escalated and [Sergeant] Frazier sprayed Mr. O'Neil with pepper spray until the pepper spray can was empty causing Mr. O'Neil permanent eye damage.

D.I. 47 ¶ 13.

Defendants argue that Plaintiff fails to state a claim of excessive force against Sergeant Frazier because he does not allege that Sergeant Frazier's use of force was not a good faith

7

attempt to restore order, or that he acted maliciously or sadistically to intentionally cause harm. Rather, Defendants argue, Sergeant Frazier acted reasonably as a matter of law to prevent Plaintiff from harming himself by swallowing a paperclip. *E.g.*, D.I. 52 p. 12.

Plaintiff counters that emptying a can of pepper spray into his face to stop him from swallowing a paperclip makes no sense. D.I. 56 p.5.

Applying the factors set forth above, taking the allegations as true and drawing the required inferences in favor of Plaintiff, Sergeant Frazier's use of force exceeded that which was reasonable and necessary under the circumstances. By swallowing a paperclip, Plaintiff only endangered himself. And that danger seems—based on the allegations, unlikely to place Plaintiff's life or major body functions in serious imminent peril. So the need to apply force—if any—was minimal. While perhaps some level of force could be warranted to prevent an inmate from voluntarily swallowing a paperclip, emptying a can of pepper spray on the inmate to do so does not seem reasonable as a matter of law. This is especially true given that it seems that the only effect of the pepper spray was to allegedly cause permanent eye damage. Nothing in the allegations suggests that Sergeant Frazier reasonably perceived any additional threat or that his actions were to protect himself or third persons. Similarly, nothing in the allegations—other than perhaps the fact that there was a verbal exchange—suggests that Sergeant Frazier made any attempt to temper the severity of his force.

Defendants' remaining arguments for dismissal of the excessive force claim fare no better. For example, they contend Plaintiff's claim should be dismissed because he fails to allege "basic facts" such as "the duration Plaintiff was allegedly pepper sprayed." *Id.* at p.13. Plaintiff explicitly alleges that the entire can was emptied. Facts like how long that took are a matter for discovery. Here, their absence is not sufficient for dismissal. Defendants also point out that the

use of pepper spray by prison personnel on an inmate is not excessive force per se. *See id.* (citing cases). Although true, that is not the issue. The issue is whether the allegations about Sergeant Frazier's use of pepper spray plead excessive force sufficiently to survive dismissal. They do.

Plaintiff has adequately pleaded an excessive force claim against Sergeant Frazier.

V. CONCLUSION

For the reasons set forth above, the Court will grant Defendants' Motion to Dismiss (D.I. 51) as to (1) Count I against the DOC (deliberate indifference to serious medical needs); and (2) Count III against the DOC (excessive force.) The Court will deny Defendants' Motion as to (1) Count II against the DOC (breach of contract); and (2) Count III against Sergeant Frazier (excessive force.)

An appropriate order follows.